### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK KERNER and | : | CIVIL ACTION |
| LINDA DIANE KERNER, h/w | : | |
| | : | |
| v. | : | 02-CV-4728 |
| | : | |
| SIGNODE CORPORATION | : | |

## ORDER

AND NOW this ____ day of _____, 2003, upon consideration of the Motion in Limine of Defendant Signode Corporation to preclude any and all evidence of pre-accident design changes to the Signode RCD 1431 notcher and plaintiff's response thereto, it is hereby ORDERED and DECREED that said Motion is GRANTED and plaintiff is hereby precluded from offering any evidence at trial of pre-accident design changes to the Signode RCD 1431 notcher.

                                                    Honorable John P. Fullam

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK KERNER and<br>LINDA DIANE KERNER, h/w | : | CIVIL ACTION |
| | : | |
| v. | : | 02-CV-4728 |
| | : | |
| SIGNODE CORPORATION | : | |

**DEFENDANT, SIGNODE CORPORATION'S**
**MOTION TO PRECLUDE EVIDENCE OF PRE-ACCIDENT DESIGN CHANGES**

Defendant Signode Corporation, by and through its counsel, White and Williams LLP, hereby moves this Honorable Court for an Order precluding any and all evidence at trial of pre-accident design changes to the Signode RCD 1431 notcher for the reasons that said evidence is not relevant to the issue of whether the product involved in the plaintiff's accident was defective at the time of sale, said evidence will cause unnecessary confusion to the jury and said evidence will cause severe prejudice to defendant. In support of this motion, defendant relies upon the attached Memorandum of Law which more fully sets forth the reasons why preclusion of the evidence is appropriate and necessary.

**WHEREFORE**, defendant Signode Corporation respectfully requests this Honorable Court enter an Order excluding any and all evidence relating to post-sale, pre-accident design modifications or changes to the Signode RCD 1431 notcher.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By: _____
James J. Donohue, Esquire/15654
Michelle D. Coburn, Esquire/62987
1800 One Liberty Place
Philadelphia, PA 19103-7395
(215) 864-7037/6355
*Attorney for Defendant,*
*Signode Corporation*

Dated: November 11, 2003

DOCS_PH 1501847v1A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FREDERICK KERNER and | : | CIVIL ACTION |
| LINDA DIANE KERNER, h/w | : | |
| | : | |
| v. | : | 02-CV-4728 |
| | : | |
| SIGNODE CORPORATION | : | |

**DEFENDANT, SIGNODE CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO PRECLUDE EVIDENCE OF PRE-ACCIDENT DESIGN CHANGES**

**I.     INTRODUCTION**

This is a case about whether a product was unreasonably dangerous at the time it was sold. This is not a case about whether subsequent changes in the product made the product safer or why subsequent changes were made to the product. Defendant files this Motion in Limine to preclude the admissibility at trial of any evidence related to post-sale, pre-accident design changes to prevent jury confusion and prejudice to the defendant and for the purpose of limiting the evidence in this case to the issue to be decided by the jury – namely, whether the product was defective at the time of sale.

**II.    FACTS**

Plaintiff filed this lawsuit seeking damages for personal injuries allegedly sustained on July 19, 2000 in connection with his employment at U.S. Steel Corporation. At the time of the accident, plaintiff was working as a utility person at the Fairless Hills plant and was wrapping and banding coils of steel sheet (large rolls of sheets of steel). Plaintiff was using a tool manufactured by defendant Signode Corporation ("Signode") called a Signode RCD 1431 notcher or "crimper" to seal the ends of a band that was being used to secure the steel coils.

During the sealing cycle, plaintiff pushed the upper handle of the crimper approximately half way through its stroke with his right hand when the handle broke and he lost his balance, fell and was injured. Plaintiff filed this action claiming that the crimper is susceptible to fatigue cracking over extended periods of use.

The design of the crimper was changed before the plaintiff's accident. However, the crimper involved in plaintiff's accident was sold to the plaintiff's employer before the design changes were implemented. In 1998, one of Signode's largest customers wanted to make a special crimper with heavier duty handles. Signode has been making the crimper since the late 1950's and produces over 1000 crimpers a year. During all those years of production, Signode never had any reports of any accidents with broken handles. On occasion, handles to crimpers break due to visible misuse by the customer (i.e., lift trucks driven over the crimper or extension pipes applied to the handle) and it was believed that this particular customer had experienced similar abuses of the tool and wanted to do something about it. At this customer's plant, tools lay on the floor with heavy equipment being operated in the same area. Because of its relationship with this customer, Signode went ahead and produced a few prototypes for this particular customer. The prototype tools were placed with the customer with the understanding that future orders would be the same.

In late 1999, Signode decided to change the handles of the standard crimper so it did not have to produce and stock special tools for one customer. (A copy of the report of Janusz Figiel of Signode is attached hereto as Exhibit "A"). Nevertheless, plaintiff's liability expert states in his report that the design change was "to avoid premature breakage" of the handle. (A copy of the report of plaintiff's liability expert, Craig Clauser, is attached hereto as Exhibit "B"). No

mention was made in plaintiff's expert report of the fact that the change was implemented to prevent breakage due to tool misuse. As discussed below, the change in the tool is not relevant to whether the tool involved in the accident was unreasonably dangerous when sold by the defendant. This evidence can only serve to confuse the jury and severely prejudice the defendant.

### III. ARGUMENT

#### A. *The Court Has Great Discretion In Determining Whether To Preclude This Type Of Evidence*

Pursuant to Federal Rule of Evidence 403, defendant asks that the Court preclude the introduction of evidence of post-sale, pre-accident modifications at trial. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. District Courts have broad discretion in determining the probative value, prejudicial effect and overall admissibility of relevant evidence under Federal Rule of Evidence 403. *See Rice v. Skytop Lodge Corp.*, 2002 U.S. Dist. LEXIS 7752 at *2 (M.D. Pa. Apr. 23, 2002). *Accord Hamling v. United States*, 418 U.S. 87, 124-125 (1974); *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978), *cert. denied*, 439 U.S. 985 (1978) (stating "it is manifest that the draftsmen intended that the trial judge be given a very substantial discretion in balancing probative value on the one hand and an unfair prejudice on the other"). Accordingly, it is within the Court's ample discretion to preclude this evidence from trial.

**B.**     *The Prejudicial Effect Of Pre-Accident Design Changes Outweighs Any Probative Value It Might Have*

Evidence of design changes made after the sale of the product is not particularly probative, based on a plaintiff's burden of proof in a strict products liability case. Section 402A of the Restatement (Second) of Torts, adopted in Pennsylvania, *Josephs v. Harris Corp.*, 677 F.2d 985, 987 (3d. Cir. 1982); *Webb v. Zern*, 422 Pa. 424, 427, 220 A.2d 853, 854 (1966), provides that an action for strict products liability derives from:

> (1) One who **sells any product in a defective condition** unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) Torts, §402A (1965)(emphasis added). Thus, under Pennsylvania law, strict products liability is determined by the ***defective nature of the product when the product is sold***. *See Kelly v. Crown Equip. Corp.,* 1991 U.S. Dist. LEXIS 14452 at *6 (E.D. Pa. Oct. 8, 1991), *aff'd,* 970 F.2d 1273 (3d Cir. 1992) (citing *Josephs,* 677 F.2d at 988). The focus in a design defect case is the design of the allegedly dangerous instrumentality at the time it is sold, not the state of the art at any other time. *See id.* Accordingly, evidence related to subsequent design changes or modifications in a product, which occur after the product is sold, is not probative of the dangerousness of the product involved in the accident.

In *Kelly v. Crown Equipment Co.*, this Court considered whether to allow evidence of a post-sale, pre-accident design modification in a products liability case. At trial, the plaintiff

attempted to introduce evidence of a post-sale, pre-accident design modification, and the Honorable Norma L. Shapiro refused to admit this evidence. *Id.* at \*2-\*3. The plaintiffs then made a motion for a new trial, in part, based on the trial court's failure to admit this evidence. Judge Shapiro first determined that this evidence could be excluded under then-existing Rule of Evidence 407 (subsequent remedial measures). She then concluded that the "court properly exercised its discretion in excluding the modification as unduly confusing under Rule 403." *Id.* at \*6. Judge Shapiro noted that Pennsylvania products liability law requires the plaintiff to focus on the defective design at the time of sale, not at any other point in time. Quoting the Fifth Circuit, Judge Shapiro held:

> Instead of attempting to prove or disprove the reasons for subsequent product changes, we should consider the probative value of such evidence … and the jury's attention should be directed to whether the product was reasonably safe at the time it was manufactured … The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention away from whether the product was defective at the relevant time to what was done later.

*Id.* (quoting *Mills v. Beech Aircraft*, 886 F.2d 758, 763 (5th Cir 1989)). *See also Powell v. E.W. Bliss Co.*, 529 F. Supp. 48, 54 (E.D. Pa. 1981), *aff'd,* 681 F.2d 808 (3d Cir. 1982)(excluding evidence of a pamphlet defendant began sending to its customers after sale of product but before plaintiff's accident entitled "Safety Precautions and Suggestions" under Rules 407 and 403).

Other Circuit Courts are in accord with this view, noting the irrelevance and low probative value of such evidence. In *Raymond v. Raymond Corp.,* 938 F.2d 1518, 1524 (1st Cir. 1991), the First Circuit stated:

> introduction of evidence of pre-accident design modifications not made effective until after the manufacture of the allegedly defective product may reasonably be found unfairly prejudicial to

- 5 -

> the defendant and misleading to the jury for determining the question whether the product was unreasonably dangerous at the time of manufacture and sale.

Id. Similarly, the Sixth Circuit more recently upheld a trial court's decision to exclude pre-accident design change evidence as prejudicial under Rule 403. In *Stanley v. Aeroquip Corp.*, that Court examined post-manufacture, pre-accident design changes made to an Aeroquip Corp. FT1028 hose assembly machine. *See* 1999 U.S. App. LEXIS 8034 (6th Cir. Apr. 22, 1999). That court held that the exclusion of this evidence was proper, and that there was no prejudice to the plaintiff in precluding its introduction. The court particularly noted that the plaintiff is required to show the dangerousness of the product at the time of manufacture and that "[w]hat [plaintiff] gains by the introduction of the actual changes is the ability to argue that the companies were of the opinion that the FT1028 needed modification. Courts have frequently noted how weak this evidence is of design defect, and many courts find that it is altogether irrelevant." *Id.* at *13-*14. (citing *Raymond,* 938 F.2d at 1524-25 and *Grenada Steel Indus., Inc. v. Alabama Oxygen Co.*, 695 F.2d 883, 887-88 (5th Cir. 1983)).

In this case it is apparent that if this evidence is admitted, there will be a considerable amount of time devoted to explaining why the design change was made. Plaintiff's expert has already stated his opinion that the change was implemented to prevent "premature breakage." Defendant will be forced to explain to the jury that this change was made in response to the request of one of its customers due to the customer's misuse of the tool. The prejudice that will result to defendant is overwhelming. The jury will conclude that the design change was made because the product was not safe thus depriving defendant of the opportunity to prove that the product involved in plaintiff's accident was not unreasonably dangerous when sold. Simply

stated, this evidence must be excluded to ensure that the jury decides the real issue in the case, namely whether the product involved in the accident was unreasonably dangerous at the time it was sold.

## IV.    CONCLUSION

Plaintiff is required to demonstrate the defectiveness of the crimper at the time of sale. Any post-sale, pre-accident changes or modifications to the crimper are not probative of the design, condition or state of the art surrounding the product at the time of sale.  This type of evidence would be misleading and confusing to the jury and highly prejudicial to defendant. Accordingly, defendant requests that this Court preclude plaintiffs from presenting any evidence at trial concerning post-sale, pre-accident design modifications to the crimper.

**WHEREFORE**, defendant Signode Corporation respectfully requests this Honorable Court enter an Order excluding any and all evidence relating to post-sale, pre-accident design modifications or changes to the Signode RCD 1431 notcher.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By: _____
James J. Donohue, Esquire
Michelle D. Coburn, Esquire
Attorney I.D. No. 15654/62987
1800 One Liberty Place
Philadelphia, PA 19103-7395
(215) 864-7037/6355
*Attorneys for Defendant,*
*Signode Corporation*

Dated:  November 11, 2003

## CERTIFICATE OF SERVICE

I, Michelle D. Coburn, Esquire, hereby certify that I have served the attached Motion in Limine to Preclude Pre-Accident Design Changes and Memorandum of Law in Support Thereof on this date to be served via hand delivery upon the parties listed below:

>Rosemary Pinto, Esquire
>Feldman & Pinto, P.C.
>1604 Locust Street, 2R
>Philadelphia, PA  19103

>**WHITE AND WILLIAMS LLP**

>By: _____
>Michelle D. Coburn, Esquire
>Attorney I.D. No. 62987
>1800 One Liberty Place
>Philadelphia, PA 19103-7395
>(215) 864-6355
>*Attorney for Defendant,*
>*Signode Corporation*

Dated:  November 11, 2003